UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RACHEL M. ROLAND, on behalf of herself and all others similarly situated, | : : : | |
| Plaintiff, | : : | CASE NO. 1:15cv325 |
| v. | : : | Judge Dlott |
| CONVERGYS CUSTOMER MANAGEMENT GROUP INC., CONVERGYS CORPORATION, | : : : : | |
| Defendants. | : : | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND RELATED RELIEF**

**I.     INTRODUCTION**

On March 31, 2015, Convergys Customer Management Group Inc.'s ("Convergys")[1] client, AT&T Mobility, unexpectedly terminated its contract with Convergys regarding Convergys' AT&T Mobility work-at-home program. The termination of the AT&T Mobility work-at-home program caused Convergys to eliminate the positions of hundreds of AT&T Mobility work-at-home customer service agents or "home agents", including Plaintiff Rachel Roland. The termination of the program was sudden and unforeseeable, leaving Convergys with less than 60 days to notify its AT&T Mobility "home agents" of the elimination of their positions. Prior to the elimination, Convergys offered many of its "home agents" an opportunity to remain employed with Convergys by servicing other clients or working in different programs.

---

[1] In her Motion for Class Certification, Plaintiff collectively refers to Convergys Corporation and Convergys Customer Management Group Inc. For the sake of clarity, Convergys Customer Management Group Inc. employed the Plaintiff. Convergys Corporation is the parent of Convergys Customer Management Group Inc., but was not the employer of Plaintiff.

Many of the "home agents" accepted those offers and some of the "home agents" rejected the offers.

Plaintiff Roland alleges that Convergys violated the WARN Act by not providing the AT&T Mobility work-at-home agents with sufficient notice of the elimination of their positions. Convergys denies any liability in this action as the WARN Act does not apply in this context,[2] and even if it did, Convergys' reduced notice is sufficient because the elimination of the AT&T Mobility work-at-home program was unforeseeable and Convergys was in the process of actively seeking business to keep the program operational.

Although Plaintiff has not identified any other former Convergys employee interested in pursuing a WARN claim against Convergys, Plaintiff now seeks to certify this matter as a class action. At this early stage in the litigation, Convergys does not oppose Plaintiff's motion for class certification.[3] Convergys does, however, oppose Plaintiff's proposed class definition and proposed Class Notice as stated in Exhibit C to Plaintiff's Motion for Class Certification. Convergys requests the Court revise the proposed class definition and Class Notice, as detailed below.

## II. MATERIAL FACTS

Convergys provides customer care services to its clients, including AT&T Mobility – a subsidiary of AT&T that provides wireless services. Convergys provides customer care support to AT&T Mobility for a range of different products and services. (Bill Williams Dec. ¶ 3, Exhibit A). Convergys provides support for AT&T Mobility through thousands of employees located in various call centers across the country and previously, in part, through "home agents" in its work-at-home program. (Id).

---

[2] Because the putative class members worked at hundreds of different locations (e.g. their homes), there was no single site of employment as required to bring a WARN claim.
[3] Convergys preserves the right to file a motion to decertify once a more complete record is developed.

Convergys primarily provides services through fixed-location call centers, where employees travel from home to a central office to work. (Id). Under the AT&T Mobility work-at-home program, Convergys had customer service agents who, for their own convenience, worked out of their homes in support of AT&T Mobility.[4] (Id). The work-at-home employees were scattered across the nation, each at a different site of employment. (Id).

AT&T Mobility first provided notice of its intention to cancel the AT&T Mobility work-at-home program on approximately March 31, 2015. (Id. at ¶ 4). The cancellation came as a surprise to Convergys. (Id). Upon receiving the cancellation notice, Convergys negotiated with AT&T Mobility for as much time as possible to continue the program. (Id). Convergys also attempted to obtain additional business from existing and/or prospective clients in order to transfer the work-at-home employees to other programs to continue their employment. (Id). After extensive discussions with AT&T Mobility, a final decision was made to discontinue the AT&T Mobility work-at-home operation effective May 16, 2015. (Id. at ¶ 6). On April 21, 2015, within one week of learning of the final decision, Convergys sent notice to all of the AT&T Mobility work-at-home employees informing them that the work-at-home program was being discontinued effective May 16, 2015. (April 21, 2015 Letter, Exhibit B.) Employees were encouraged to apply for other positions within Convergys. (Id; Williams Dec. ¶ 5, Ex. A) Approximately half the affected U.S. employees applied for and were transferred to other positions within the Company without losing employment. (Williams Dec. ¶ 5). Other employees either declined to apply for positions, turned down offers, or were unable to secure positions and their employment was terminated effective May 16, 2015. (Id. ¶ 5).

---

[4] Convergys still has work-at-home programs for other clients.

## III. ARGUMENT

### a. <u>Certification Should Be Limited To A More Appropriate Class.</u>

The key elements in defining a class include: "(1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner." *Miller v. University of Cincinnati*, 241 F.R.D. 285, 287 (S.D. Ohio 2006) (J. Rose). "The identities of the class members do not need to be specified for certification, but the proposed class must be sufficiently definite in order to demonstrate that a class actually exists." *Id.* "Requiring an objectively ascertainable class is important because without one, it will be unclear who is bound by the judgment...." *Id.*

At this early stage in the litigation, Convergys does not oppose Plaintiff's motion for class certification. Plaintiff's definition of the class, however, is overly broad and the Court should limit the class to the relevant class members based on the claims and evidence. Convergys proposes the following class definition:

> Plaintiff and all other similarly situated former employees, pursuant to 29 U.S.C. § 2104(a)(5) and Fed. R. Civ. P. 23(a), who were involuntarily terminated from Defendants' AT&T Mobility Work-at-Home operations without cause on or about May 16, 2015, and within 30 days of that date, and (i) who are affected employees within the meaning of 29 U.S.C. § 2101(a)(5), and (ii) who have not filed a timely request to opt-out of the class.

Convergys requests the Court revise the Plaintiff's proposed class definition to limit class membership to those employees who were <u>involuntarily</u> terminated, as opposed to including those who voluntarily terminated their employment. Only aggrieved employees who suffer an "employment loss" as defined in 29 U.S.C. § 2101(a)(6) can be included in a WARN class. 29 U.S.C. §2104(a)(1). WARN explicitly carves out from its protection those employees who were discharged for cause, voluntarily left employment, retired, were laid off for six months or less or

4

had their hours of work reduced more than 50% during each month of any 6-month period. As a consequence, to be entitled to WARN protection and to be eligible to participate in a WARN class action, the employee must have been involuntarily terminated from Convergys' AT&T Mobility Work-at-Home operations without cause.

Convergys requests the Court delete Plaintiff's proposed subclass of former employees who "were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or plant closings ordered by Defendant on or about May 16, 2015." The WARN statute and its regulations do not call for such a speculative and open-ended class definition. Determining who was terminated as the "reasonably foreseeable consequence" of the alleged mass layoff or plant closing would necessarily introduce individual litigation on membership of the class – which defeats the purpose of class litigation. *Miller*, 241 F.R.D. at 288 ("Where extensive factual inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper.") In each circumstance, the Court would have to determine whether a former employee's termination was the "reasonably foreseeable consequence" of the AT&T Mobility Work-at-Home closure. Instead, the statute and regulations provide a clear 30 day look back and look forward provision (from May 16, 2015 – the date of the AT&T Mobility Work-at-Home closure) to determine who was entitled to a WARN notice. 29 USC 2101(a)(2) and (3). In rare circumstances, where multiple employment losses occur at different times in a single site of employment but each individual closing or layoff does not reach the sufficient number to constitute a plant closing or mass layoff, the total number of employment losses at the single site within a 90 day period can be aggregated to reach the required number of employment losses to constitute a mass layoff and/or plant closing. 29 USC 2102(D); 20 CFR 639.5; Analysis and Comments of 20 CFR 639.5(a) ("it is important to note

that the 90-day aggregation provision applies only to separate actions each of which is under the coverage threshold."). The WARN statute and its regulations clearly limit the look back and look forward period to 30 days, and at most 90 days in rare circumstances inapplicable to this case. They do not provide an open-ended and ambiguous look back period to define a class. *See Lace v. Fortis Plastics*, LLC 295 F.R.D. 192, 206 (N.D. Ind. 2013) (court eliminated language from class definition including employees who were terminated "in anticipation of, or as the reasonable foreseeable consequence of, the plant closing"); *see also Weekes-Walker v. Macon County Greyhound Park, Inc.*, 281 F.R.D. 520, 524 (M.D. Ala. 2012); *Alberts v. Nash Finch Co.*, 245 F.R.D. 399, 412 (D. Minn. 2007). Rather, the class should be limited to those employees who suffered an employment loss because of an alleged mass layoff or plant closing within 30 days of May 16, 2015.

Additionally, to the extent the Court utilizes Plaintiff's ambiguous "reasonably foreseeable consequence" language in the class definition, Convergys requests the Court clearly state that there is only an <u>allegation</u> that a mass layoff and/or plant closing was ordered by Convergys on or about May 16, 2015. Convergys denies there was a mass layoff or plant closing under WARN. Plaintiff's proposed class definition and proposed notice insinuates that a determination has been made that there was a mass layoff and/or plant closing – as opposed to just an allegation. Convergys requests the Court clarify that at this stage in the litigation there is only an allegation of a mass layoff and/or plant closing, but the Court has not yet made a determination on the issue. This clarification would avoid any undue inference that the Court has concluded that a mass layoff and/or plant closing occurred.

### b. The Court Should Issue A More Appropriate Class Notice.

The Plaintiff's proposed notice is not neutral and omits important information that courts regularly include in class action notices. The Court should notify prospective class members of the full responsibility and consequence of joining a WARN class action, such as the prospect of being liable for attorneys' fees and costs under 29 U.S.C. § 2104(a)(6), the responsibility of participating in the litigation, the ability of prospective class members to retain their rights to file their own action if they opt-out of this action and identifying for the prospective class members the parties and counsel involved in the action. The Court should also avoid making it unduly burdensome for prospective class members to opt-out of the action by requiring them to submit their "Exclusion Forms" via certified mail.

Convergys requests the Court provide notice to prospective class members of the consequences of an adverse judgment by proposing the following language: "If you do not prevail on your claim, court costs and Defendants' attorneys' fees may possibly be assessed against you." The WARN Act states that the Court, "in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2014(a)(6). This provision applies to the prevailing party, regardless if they are plaintiff or defendant. *Id*. Courts have regularly held that prospective class members must be aware of the risks associated with joining a class action, including the potential assessment of costs and attorneys' fees. *Baden-Winterwood v. Lifetime Fitness*, 2006 WL 2225825 * 1 (S.D. Ohio Aug. 2, 2006) (J. Frost); *Pierce v. Wyndham Vacation Resorts, Inc.,* 2015 WL 3651464 * 2 (E.D. Tenn. June 1, 2015); *Creten-Miller v. Westlake Hardware, Inc.*, 2009 WL 2058743 * 3-5 (D. Kan. July 15, 2009); *Bah v. Shoe Mania, Inc.*, 2009 WL 1357223 * 4 (S.D. NY May 13, 2009). In this case, prospective

class members should be apprised of both the potential benefits and consequences of joining the action.

Similarly, the Court should inform prospective class members that they may be obligated to testify at trial and at depositions and may be required to travel for the trial if they join the action. Courts have held that prospective class members should be made aware of such basic obligations when joining a class action. *Baden-Winterwood*, 2006 WL 2225825 * 2; *Creten-Miller*, 2009 WL 2058743 * 3-5; *Bah*, 2009 WL 1357223 * 4.

The Court should also modify the "Exclusion Form" to either remove the language stating the prospective class member does not want to "receive any benefits from the Class Action" or include language informing the prospective class member that if they do not wish to participate in the class action they still retain the right to file their own WARN action or participate in another WARN action. Plaintiff's proposed language is misleading and will lead prospective class members to believe that if they opt-out of this action they will have no rights to receive any benefits from any WARN action. The prospective class members should be clearly informed in the "Exclusion Form" that if they opt-out of this action, they still retain their rights to receive benefits from another action.

As a matter of fairness, in the section of the Notice identifying counsel, the Notice should identify both sets of counsel and their contact information – not just Plaintiff's counsel. Prospective class members have a right to be fully informed as to any litigation they are joining or opting out of. Several courts have similarly agreed that information regarding both sets of counsel is necessary and fair. *Baden-Winterwood*, 2006 WL 2225825 * 2; *Pierce,* 2015 WL 3651464 * 2; *Krzesniak v. Cendant Corp.*, 2007 WL 4468678 * 3 (N.D. Cal. Dec. 17, 2007);

*Creten-Miller*, 2009 WL 2058743 * 3-5; *Sibley v. Sprint Nextel Corp.*, 2009 WL 662630 * 3 (D. Kan. Mar. 13, 2009).

Finally, the Court should eliminate from the Plaintiff's proposed notice any requirement that prospective class members mail their "Exclusion Form" via certified mail. As the Southern District of Ohio Bankruptcy Court has previously held, requiring individuals who want to opt-out of the litigation to submit such forms via certified mail is unduly burdensome and expensive. *In re ABMD Ltd.*, 439 B.R. 475, 490 (Bankr. S.D. Ohio 2010); *see also Murphy v. LenderLive Network, Inc.*, 2014 WL 5396165 * 6 (D. Col. Oct. 22, 2014). In this case, of the alleged 700 prospective class members, Plaintiff has not been able to identify anyone beyond herself who has any interest in joining this action. Because the class action vehicle indiscriminately forces all potential class members who do not opt-out to automatically join the lawsuit, the Court should not make it onerous for uninterested individuals to opt-out of the action by forcing them to travel to their post office and pay an extra fee to mail out their "Exclusion Form" via certified mail. Moreover, Plaintiff cannot argue that delivery of the "Exclusion Form" via First Class U.S. Mail is insufficient because the Plaintiff's propose to mail the Class Notice to prospective class members via First Class U.S. Mail. As a consequence, there is no legitimate reason to require those who choose to opt-out of this lawsuit to do so via the more expensive and burdensome certified mail.

## IV. CONCLUSION

For the foregoing reasons, Convergys requests the Court more appropriately limit the definition of the class and revise the Class Notice as stated herein.

Respectfully submitted,

*s/       Neal Shah*
George E. Yund (0017714)
Raymond D. Neusch (0024822)
Neal Shah (0082672)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, OH 45202
(513) 651-6800
gyund@fbtlaw.com
rneusch@fbtlaw.com
nshah@fbtlaw.com

*Trial Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 15, 2016, a copy of the foregoing Defendants' Response in Opposition to Plaintiff's Motion for Class Certification and Related Relief was served via the Court's electronic filing system on the following:

Chad E. Willits, Esq.
Felix J. Gora, Esq.
RENDIGS, FRY, KIELY & DENNIS, LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Telephone: (513) 381 9200
cwillits@rendigs.com
fgora@rendigs.com

Jack A. Raisner, Esq.
René S. Roupinian, Esq.
OUTTEN & GOLDEN LLP
3 Park Avenue, 29th Floor
New York, NY  10016
Telephone: (212) 245-1000
jar@outtengolden.com
rsr@outtengolden.com


*s/ Neal Shah*

1160264.0627228   4835-6860-2668v3